FILED
U.S. DISTRICT COURT
MIDDLE DISTRICT OF TENN.
OCT 0 7 2015
BY _____
DEPUTY CLERK

UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF TENNESSEE

NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | NO. 3:15-00172 |
| | § | |
| v. | § | 18 U.S.C. § 1347 |
| | § | 18 U.S.C. § 2 |
| JOHN J. CAUTHON | § | |

# INDICTMENT

THE GRAND JURY CHARGES:

## GENERAL ALLEGATIONS

At all times relevant to this Indictment:

1. The Medicare Program ("Medicare") was a federal healthcare program providing benefits to individuals who were over the age of 65 or disabled. Medicare was administered by the Centers for Medicare and TennCare Services ("CMS"), a federal agency under the United States Department of Health and Human Services. Medicare was a "healthcare benefit program" as defined by Title 18, United States Code, Section 24(b).

2. Individuals who qualified for Medicare benefits were commonly referred to as Medicare "beneficiaries." Each beneficiary was given a Medicare identification number, sometimes referred to as the beneficiary's Health Insurance Claim Number ("HICN") and sometime referred to as simply a Medicare number.

1

3. Physicians and other healthcare providers that provided services to Medicare beneficiaries were referred to as Medicare "providers." To participate in Medicare, providers were required to submit an application in which the providers agreed to comply with all Medicare related laws and regulations. If Medicare approved a provider's application, Medicare assigned the provider a Medicare "provider number." A healthcare provider with a Medicare provider number could file claims with Medicare to obtain reimbursement for services rendered to beneficiaries.

4. To receive payment from Medicare, providers submitted or caused the submission of claims to Medicare, either directly or through a billing company.

5. Health care providers used universal procedure and diagnosis codes to bill insurers, including Medicare. Current Procedural Terminology ("CPT") codes are published by the American Medical Association and are descriptive and identifying codes for reporting medical services and procedures.

6. An avulsion of the nail plate, or "nail avulsion", was the removal of the offending nail from the nail bed, extending from the tip of the nail back to the eponychium (the layer of epidermis extending over the base of the nail) and nail matrix. A partial nail avulsion was the removal of a portion of the offending nail plate from the nail bed going from the tip of the nail to the eponychium and nail matrix. The CPT codes used to report nail avulsions included: 11730 (avulsion of nail plate, partial or complete, simple; single) and 11732 (each additional nail plate). CPT code 11732 was properly used in conjunction with code 11730 when a provider performed more than one avulsion of the nail plate on a particular date of service.

2

## TENNCARE PROGRAM

7. TennCare was the state of Tennessee's TennCare program ("TennCare"), which was a health care benefit program jointly funded by the State of Tennessee and the federal government. Individuals eligible under the TennCare program were referred to as TennCare "recipients."

8. TennCare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b), in that it was a public plan affecting commerce under which medical benefits, items, and services were provided to individuals and under which individuals and entities who provide medical benefits, items, or services may have obtained payments.

9. TennCare was a "Federal health care program," as defined by Title 42, United States Code, Section 1320a-7b(f), in that it was a State health care program, as defined by Title 42, United States Code, Section 1320a-7(h).

10. Provider enrollment in the TennCare program was voluntary. In order to obtain approval, the provider submitted an application for registration to TennCare. If the provider met certain qualifications, The Bureau of TennCare approved the application, entered into a written contract with the provider, and issued a unique provider identification number to the provider.

11. The TennCare program would potentially pay a portion of a claim originally submitted to Medicare in the event that the beneficiary/recipient had both Medicare and TennCare coverage. An individual who was eligible under both the Medicare and TennCare programs was referred to as a "dual-eligible beneficiary." A

3

claim originally submitted to Medicare and subsequently to TennCare for payment was referred to as a "crossover claim." Such claims were sent to TennCare once processed by Medicare. TennCare would pay its portion if Medicare originally allowed the claim.

12. TennCare services were offered through managed care entities, called managed care organizations ("MCOs"). MCOs are Health Maintenance Organizations under contract with the Bureau of TennCare.

## BLUECROSS BLUESHIELD OF TENNESSEE

13. BlueCross BlueShield of Tennessee ("BCBS") was a health care insurance company that provided health insurance through privately sold plans, employer and group plans, and also operated as a MCO.

14. BCBS was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b), in that it was a public or private plan affecting commerce under which medical benefits, items, and services were provided to individuals and under which individuals and entities who provided medical benefits, items, or services may have obtained payments.

15. Provider enrollment in the BCBS program was voluntary. In order to obtain approval, the provider must have submitted a provider application with BCBS, and if the provider met certain qualifications, BCBS would have approved the application, entered into a written contract with the provider, and issued a unique provider identification number to the provider.

4

## THE DEFENDANT

16. **JOHN J. CAUTHON** was a resident of Murfreesboro, TN. He was a Podiatrist, licensed by the state of Tennessee; and practiced as "John J. Cauthon" and previously as "Foot and Ankle Clinics of TN".

17. **JOHN J. CAUTHON** was a participating provider in the Medicare program, the TennCare program, and with BCBS.

## COUNTS ONE THROUGH NINE

18. Paragraphs 1 through 17 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

19. From in or around May 2014, and continuing through in or around August 2015, in the Middle District of Tennessee, and elsewhere, the defendant, **JOHN J. CAUTHON** knowingly and willfully executed and attempted to execute a scheme and artifice to (1) defraud a health care benefit program, and (2) obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, or under the custody or control of Medicare, TennCare, and BCBS, health care benefit programs, as defined in 18 United States Code § 24(b), in connection with the delivery of, and payment for, health care benefits, items, and services, as further detailed below.

## PURPOSE OF THE SCHEME

20. It was the general purpose of the scheme and artifice for **JOHN J. CAUTHON** to unlawfully enrich himself through submission of materially false and fraudulent claims to Medicare, TennCare, and BCBS, for payment for services that were

5

not rendered; specifically for a surgical procedure known as a partial or complete nail avulsion. To this end, the defendant, among other things, (a) submitted and caused the submission of false and fraudulent claims to Medicare, TennCare, and BCBS; and (b) concealed the submission of false and fraudulent claims to Medicare, TennCare, and BCBS.

## THE SCHEME

21. It was a part of the scheme and artifice that, among other things:

   a. **JOHN J. CAUTHON** contracted with nursing homes to provide routine podiatric care to residents.

   b. **JOHN J. CAUTHON** applied for and maintained valid Medicare, TennCare, and BCBS provider numbers.

   c. **JOHN J. CAUTHON** maintained a bank account for the purpose of receiving and disbursing the Medicare, TennCare, and BCBS payments that were made to him as a result of the fraudulent claims.

   d. **JOHN J. CAUTHON** submitted, and caused to be submitted, materially false and fraudulent claims to Medicare, TennCare, and BCBS by representing that he had performed nail avulsion procedures (CPT Code 11730, 11732) that were never rendered.

   e. **JOHN J. CAUTHON** submitted, and caused to be submitted, materially false and fraudulent claims to Medicare, TennCare, and BCBS for the purpose of obtaining, and attempting to obtain, money to which he was not entitled.

f. **JOHN J. CAUTHON** submitted, and caused to be submitted, materially false and fraudulent claims totaling approximately $327,280.24 to Medicare, TennCare, and BCBS.

g. Based on these false and fraudulent claims, payments totaling approximately $72,554.88 were made by Medicare, TennCare, and BCBS to **JOHN J. CAUTHON**.

h. **JOHN J. CAUTHON** obtained control of the funds paid into his banking account by Medicare, TennCare, and BCBS; and he diverted those monies for his personal use and benefit, as well as that of others.

22. On or about the dates specified as to each count below, in the Middle District of Tennessee, and elsewhere, **JOHN J. CAUTHON**, for the purpose of executing and attempting to execute the above described scheme, to (1) defraud a health care benefit program, and (2) obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, or under the custody or control of Medicare, TennCare, and BCBS, health care benefit programs, as defined in 18 United States Code Section 24(b), in connection with the delivery of, and payment for, health care benefits, items, and services; knowingly and willfully caused the submission of claims to Medicare, TennCare, and BCBS for approximately the identified dollar amounts, and represented, on or about the identified dates of service, that he performed nail avulsion procedures, when he did not:

| Count | Beneficiary /Receipient | Date of Service | Date of Claim | CPT Code | Description of Service Billed | Amount Billed | Amount Paid |
|---|---|---|---|---|---|---|---|
| 1 | L. S. | 06/03/2014 | 06/05/2014 | 11730 | Nail Avulsion | $175.00 | $72.42 |
| 2 | L. S. | 10/27/2014 | 10/29/2014 | 11730 | Nail Avulsion | $175.00 | $72.42 |
| 3 | P. T. | 07/15/2014 | 07/17/2014 | 11730 | Nail Avulsion | $175.00 | $72.42 |
| 4 | D. V. | 07/28/2014 | 08/06/2014 | 11730 | Nail Avulsion | $175.00 | $72.42 |
| 5 | D. V. | 10/03/2014 | 10/06/2014 | 11730 | Nail Avulsion | $175.00 | $72.42 |
| 6 | C. M. | 08/19/2014 | 08/21/2014 | 11730 | Nail Avulsion | $175.00 | $72.42 |
| 7 | C. C. | 09/05/2014 | 09/19/2014 | 11730 | Nail Avulsion | $175.00 | $72.42 |
| 8 | C. C. | 09/05/2014 | 09/19/2014 | 11732 | 2nd Nail Avulsion | $60.00 | $26.17 |
| 9 | E. W. | 12/01/2014 | 12/03/2014 | 11730 | Nail Avulsion | $175.00 | $72.42 |

All in violation of 18 United States Code Sections 1347 and 2.

## FORFEITURE ALLEGATION

1. The allegations contained in this Indictment are re-alleged and incorporated by reference as if fully set forth in support of this forfeiture.

2. Upon conviction of the offenses alleged in Counts One through Nine of this Indictment, **JOHN J. CAUTHON**, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(7):

> (a) any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense, including but not limited to a money judgment of at least $72,554.88, representing the amount of gross profits or other proceeds obtained from the offense.

## SUBSTITUTE ASSETS

3. If, as a result of any act or omission of **JOHN J. CAUTHON**, any property subject to forfeiture:

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third party;

   c. has been placed beyond the jurisdiction of this Court;

   d. has been substantially diminished in value; or

   e. has been commingled with other property, which cannot be divided without difficulty;

the United States shall be entitled to forfeiture of substitute property, and it is the intent of the United States, pursuant to Title 18, United States Code, Section 853(p), as

incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other property of **JOHN J. CAUTHON**, up to the value of said property listed above as being subject to forfeiture.

A TRUE BILL

███████████████

FOREPERSON

_____
DAVID RIVERA
UNITED STATES ATTORNEY
(signed: Mimie R. Ramsaur for)

_____
JAMES S. SEAMAN
SPECIAL ASSISTANT UNITED STATES ATTORNEY

10